IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| ROBYN BABECKA, *as the natural mother of Alyssa Babecka*,<br><br>*Plaintiff,*<br><br>**v.**<br><br>**CSX TRANSPORTATION INC,**<br><br>*Defendant.* | CIVIL ACTION NO.<br>**3:26-cv-00006-TES** |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case concerns the tragic death of Decedent Alyssa Babecka. Decedent's mother, Plaintiff Robyn Babecka, filed suit against Defendant CSX Transportation Inc in Gwinnett County Superior Court. [Doc. 1]. She alleged that Decedent's death was "a direct and proximate result of the negligent, reckless, and grossly indifferent conduct of Defendant." [*Id.* at p. 15]. Defendant removed the case to the District Court for the Northern District of Georgia, which ultimately transferred it here. [*Id.* at p. 1]; [Doc. 11]. Months later, Defendant filed a motion for summary judgment, which is now ripe for review. [Doc. 15]. For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. [Doc. 15].

A.    **LEGAL STANDARD**

A court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*,

941 F.2d at 1437. The movant may cite to particular parts of materials in the record,

including, "'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,' which it believes demonstrate the absence of a

genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)); Fed. R. Civ. P. 56(c)(1)(A).[1] "When the *nonmoving* party has the burden of proof

at trial, the moving party is not required to 'support its motion with affidavits or other

similar material *negating* the opponent's claim[]' in order to discharge this 'initial

responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323).

Rather, "the moving party simply may show—that is, point out to the district court—

that there is an absence of evidence to support the nonmoving party's case." *Id.*

(quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide

---

[1] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

"affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

At this stage, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

The nonmovant's evidence is to be believed, and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[I]f a reasonable jury could make

3

more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment." *Sconiers*, 946 F.3d at 1263. With that said, courts may consider video evidence at the summary judgment stage. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007). "[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013). Therefore, "[a]lthough [courts] must view the facts in favor of the nonmoving party, [courts] accept video evidence over the nonmoving party's account when the former obviously contradicts the latter." *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022).

**B.      FACTUAL BACKGROUND**

Before getting to the facts, the Court pauses to address the sensitive nature of the events in this case and the sources from which it draws its facts. First, the Court extends its sympathies to Plaintiff and her family. With them in mind, the Court will keep the following facts as brief and clean as possible. Second, in support of its motion, Defendant filed a dash camera video from the front of the train. Plaintiff does not dispute the authenticity of the video.[2] *See* [Doc. 20-1]. Therefore, the Court draws its facts primarily from the video. *See Scott*, 550 U.S. at 380–81. Remaining facts come from

---

[2] Instead, Plaintiff merely disputes whether the video "provides a complete or unassailable account of events." [Doc. 20].

those facts in Defendant's statement of material facts that Plaintiff does not dispute.[3]

On March 28, 2025, one of Defendant's trains was traveling northbound. [Doc. 15-2, ¶ 1]. The train consisted of a lead locomotive and 119 freight cars. [*Id.* at ¶¶ 3–4]. It was 6,457 feet long and weighed 2,975 tons. [*Id.* at ¶ 4]. At 12:49 p.m. GMT (8:49 a.m. EST), the train was approaching railroad milepost SG517 in the area of the Atlanta Highway at Dials Mill Road. [Doc. 15-2, ¶ 2]; [Doc. 15-3, p. 6].[4] The video begins with the train approaching a rightward bend in the track. [Doc. 15-3, p. 6, 12:49:14]. Trees line both sides of the track. [*Id.*]. The train sounded its horn continuously for six seconds as it approached the bend. [*Id.* at 12:49:18–12:49:24]. As the track continued in its rightward bend, the trees on either side opened into a clearing. [*Id.* at 12:49:28]. On the far end of the clearing, trees and a slight hill blocked the view of the track as it continued to curve to the right. [*Id.*]. The train blew its horn for six more seconds as it entered the clearing. [*Id.* at 12:49:29–12:49:35]. The train approached what, by the Court's belief, was a dirt road across the tracks in the middle of the clearing, and blew its horn briefly, followed by a continuous four second horn as it crossed the road. [*Id.* at 12:49:39–12:49:45].

The train passed through the intersection and approached the edge of the clearing. As the train drew near to the edge, it once again sounded its horn

---

[3] The Court cites to Defendant's statement of undisputed facts for clarity, but Plaintiff's responses to those facts are contained in [Doc. 20].

[4] Defendant filed Exhibit A to Doc. 15-3 as a placeholder for its dash camera footage. [Doc. 15-3, p. 6]. Therefore, citations to the dash camera footage will be: Doc. 15-3, p. 6 followed by the internal GMT timestamps within the video.

continuously for six seconds. [*Id.* at 12:50:00–12:50:06]. The train rounded the bend, and the track on the other side was in shadow. [*Id.* at 12:50:05]. Decedent Alyssa Babecka was first visible in the shadows at 12:50:05 GMT. The train continued around the bend. As it approached the straightaway on the other side, it became clear that Decedent was walking in the center of the tracks on the straightaway. [*Id.*]; [Doc. 15-2, ¶ 16].

Decedent was walking towards the oncoming train as it approached, in the center of the tracks and within the shadow of the trees. [*Id.* at 12:50:18–12:50:20]. She carried a blue bag in her right hand. *Id.* She made no move to avoid the train as it approached, even at the last second. [*Id.* at 12:50:21]. The train struck her around 12:50:21 GMT. The train sounded its horn continuously for 12 seconds as it approached and ultimately hit Decedent. [*Id.* at 12:50:09–12:50:22].

The time between when the lead locomotive of the train exited the curve onto the straightaway and when it struck Decedent was approximately eight seconds.[5] [Doc. 15-2, ¶ 24]; [Doc. 20-2, ¶ 3]. During this time, the train was traveling at 37 miles per hour. [Doc. 15-2, ¶ 29]. The federal maximum speed for this section of the track was 50 miles per hour. [Doc. 15-2, ¶ 30]. It took the train 29 seconds to come to a complete stop after the crew activated the emergency brakes. [Doc. 15-2, ¶ 26]; [Doc. 20-2, ¶ 7]. In total, the

---

[5] Plaintiff denies several of Defendant's facts, but then later re-asserts the same facts in Plaintiff's own statement of material facts. *Compare* [Doc. 20], *with* [Doc. 20-2]. In those places, the Court cites both parties' facts.

train blew its horn six times—a cumulative of 35 seconds—in the minute leading up to its impact with Decedent.

### C.   DISCUSSION

Plaintiff has not met her burden to survive summary judgment. There are simply no disputed material facts here. *See Duncan v. Corr. Med. Servs.*, 451 F. App'x 901, 903 (11th Cir. 2012) ("Summary judgment is appropriate if there are no disputes as to material facts."). In her brief in opposition to Defendant's Motion for Summary Judgment, Plaintiff does not point to any disputed material facts but instead argues that certain issues are not appropriate for summary judgment because they are for a jury.[6] [Doc. 20-1, p. 3]; [Doc. 20-2, p. 2]. Not only does Plaintiff not point out any disputed material facts, but she also affirms many of the same facts she purports to deny from Defendant's statement of undisputed material facts. *See* [Doc. 15-2]; [Doc. 20]; [Doc. 20-2]. Those facts that she does not reiterate in her own statement of undisputed facts are easily discernable from the dash camera footage. In addition to failing to point to any disputed material facts, Plaintiff also failed to produce relevant and admissible evidence beyond the pleadings. *Josendis*, 662 F.3d at 1315 (citing *Celotex*, 477 U.S. at 324). Plaintiff has not met her burden.

Furthermore, Defendant is entitled to summary judgment because the facts—

---

[6] Defendant has pointed out that many of the cases Plaintiff cites do not support her arguments or the propositions for which she cites them. [Doc. 21, p. 7 n.6]. After a cursory review of these cases, the Court comes to the same conclusion. So, Plaintiff's legal arguments are unpersuasive.

including Plaintiff's own undisputed facts—do not support any of Plaintiff's claims and even directly contradict the factual allegations in her complaint. *See* Fed. R. Civ. P. 56(a) (summary judgment is appropriate if there is no genuine issue of fact and the movant is entitled to judgment as a matter of law).

For example, in her complaint, Plaintiff alleges that Decedent was walking "on a regularly traveled pedestrian path adjacent to the railway" when she was "struck and fatally injured from behind by a CSX-operated train . . . ." [Doc. 1, p. 15]. She alleges that CSX "knew or should have known of this regular pedestrian traffic and owed a duty of care to take reasonable steps to avoid injury." [*Id.*]. She further alleges that CSX was negligent by "[o]perating the train at an excessive and unsafe speed," "[f]ailing to maintain a proper lookout for persons or hazards along the roadway," "[f]ailing to sound an audible warning . . . at appropriate times," "[a]llowing vegetation and obstructions to accumulate . . . which obscured visibility and prevented [t]he decedent and the train crew from seeing one another," and "[f]ailing to implement safety precautions in areas with known pedestrian activity . . . ." [*Id.* at p. 16].

However, as indisputably shown from the train's camera, Decedent was not walking on a sidewalk, but instead she was walking in the middle of the train tracks and directly toward the oncoming train. To be sure, there is no sidewalk visible on either side of the road where Decedent was walking. *See* [Doc. 15-3, p. 6 12:50:22]. There would be no reason for the train to expect a pedestrian in this area, and Plaintiff has

8

provided no evidence showing otherwise. Despite this, the train sounded its horn six times for a total of 35 seconds before Decedent walked into the train. The train was also traveling at a reasonable speed—13 miles per hour lower than the federal maximum for that section of track.

Next, the fact that the train blew its horn continuously for 12 seconds before it struck Decedent and immediately stopped after hitting her shows that it maintained a proper lookout. As for vegetation, there is no federal requirement to cut vegetation so that pedestrians and trains might see each other – especially when a pedestrian chooses to walk in the middle of the train tracks. *See* 49 C.F.R. § 213.37; *see also Reese v. CSX Transportation, Inc.*, No. CV 118-215, 2020 WL 5740253, at *30 (S.D. Ga. Sept. 24, 2020) (explaining that the regulation protects against its enumerated harms, and nothing more). Plaintiff's allegations are unsupported by the record.

Finally, Plaintiff admits that she "doesn't believe the train conductor could have seen Decedent in time to stop before it was to [sic] late because of the curves on the railroad track." [Doc. 15-4, p. 7]. That's really the bottom line that goes against all of her arguments against summary judgment. Seventeen seconds elapsed between the time Decedent was first visible on the tracks and the time the train struck her. It took the train 29 seconds to stop. Even if the train had initiated its brakes the second Decedent was visible, and risked its cars tipping over on the curve, it still would not have been able to stop in time. Defendant simply was not negligent, and no reasonable jury could

9

find otherwise.

Even if there was some iota of negligence from Defendant, "because [Decedent] was a trespasser when [s]he was struck and was owed only a duty not to be caused willful or wanton injury, a jury could not reasonably find in favor of [Plaintiff]." *Ohl v. CSX Transportation, Inc.*, No. 22-13298, 2023 WL 4174411, at *2 (11th Cir. June 26, 2023); *see also* O.C.G.A. § 51-3-3. With no reasonable jury able to find for Plaintiff, summary judgment is appropriate here.

**D.      CONCLUSION**

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment. [Doc. 15].

**SO ORDERED**, this 3rd day of June, 2026.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

10